Good morning, your honors. Good morning. Andre Kronthal for the appellant, MEGA. Your honors, this appeal, as you are aware, is very narrowly focused on the issue of the attorney's fees awarded in the amount of $29,000. And our argument, of course, is that there was an objectively reasonable basis for removing this case, as MEGA had done many times before successfully, and the existence of the MDL case in the cases that we cite in the record. But we look under the settled rules of California, not the other states. So we view this through the prism of California law. So explain to us why it was objectively reasonable under California law to remove it. Certainly, yes. Under California law, it was appropriate because the California cases concerning conspiracy and the agency issues, that is whether or not an agent can conspire with a principal. And I'm referring specifically to the cases of Black v. B of A. Are you saying under California law an agent can never conspire with a principal? Never, never, never? No, your honor. We're not saying that. I think the distinction that the cases make in order to define when it is that there can be a conspiracy between an agent and a principal is that it has to do with the agent seeking some independent, tortuous conduct, not involving, in the case of an insurance company, what it is that the insurance company is supposed to do. That was the case, for example, in the Cassiano case, which involved wrongful duty, wrongful breach of the duty not to defend. What about the Schaefer case, which says, a cause of action for conspiracy will lie against agents and employees of insurers, even though the former are not parties to the agreement of insurance when they join the insurer in a conspiracy to defraud the insurer. And that was the allegation of the complaint. Why doesn't that defeat your argument? It doesn't for this reason, your honor, because as recognized in a Cassiano and in Black, in a situation where the alleged wrongful conduct that was the subject of the fraud is something that involved what the insurer's business is. In this case, it is the alleged misrepresentation that the plaintiff, Gardner, was singled out for premium increases. That was something that the insurer does. It sets premium. It collects premium. If it's something that is separate and distinct and wrongful, if the agent, for example, in the Union v. Equifax case, you've got a whole bunch of entities conspiring together in order to have the insured examined by a doctor who falsifies a report so they can deny benefits in that situation. I think that the key factor here is you don't really have a conspiracy alleged by an agent and a principal in that kind of a circumstance where it's recognized. But outside the realm of what the insurance company is expected to do is the misrepresentation. That's what's outside the realm because the insurance company is supposed to collect premiums and insure. So once the misrepresentations came into the mix, then that's outside the scope of what an insurer is expected to do. Well, but in the Black case, they recognize that's the Black v. B of A case, which involved the alleged misrepresentation was not advising the borrower that the bank really never intended to lend more money to the borrower in the future. And when it failed to do so, boom, the borrower was hit with great economic harm. And in that case, it was a statute of limitations case. So it's really very, very much on point here. Did you cite that case in your brief? Yes. It's cited in the brief, and it's at 30 Calab 4th 1. It's a 1994 case. Where in your brief did you cite it? I'll find that for you. I know it's cited in the papers. You should have your table of authorities. Yes, I do have my table of authorities here. It's cited in our opening brief in four different places, Your Honor. Pages 7, 9, 11, and 17. Okay. It involved a statute of limitations issue and also an allegation to get around it, an argument to get around it, that the individual defendants were involved in a conspiracy. So it was very similar. There the court sustained a demur and the court of appeal affirmed and said that the conspiracy allegations couldn't toll the statute in that kind of a circumstance because it was inconsistent for the plaintiff to allege that the agent, the bank employees, were acting within the course and scope of their employment and agency and yet also allege at the same time that the agent was acting for his own benefit. That is the kind of tort that takes it out of the general rule, the agent immunity. And so we've got the same exact situation here, Your Honor, as we have in Black because Mr. Hayman, as alleged over a dozen times in the complaint, was acting as an employee and agent of Mega and others and within the course and scope of that employment agency. Based on that allegation and applying the Black case to it, you can't reconcile the exception to the immunity issue here. The conspiracy allegation doesn't toll it. The other reason, Your Honors, is because even if there was a conspiracy and even if it was properly alleged, and our point is it needs to be alleged with particularity within the complaint and it isn't. When you've got a situation like that here, you have to have something more to explain why it is that the claim wasn't brought sooner. What was the last overt act in furtherance of the conspiracy? That's what's required. Here, the supposed last overt act was a telephone call that Mr. Gardner made to the agent in 2004, 10 years after they met for the first time and probably the only time concerning the policy. So 10 years later, there's this call from the plaintiff himself. That's the last overt act in furtherance of the conspiracy? If the representation were continued, if the misrepresentation were continued, that's still an overt act because that's an opportunity to say, hey, we made a mistake. You know, we can refund your premiums. We charged you. We shouldn't have raised your premium. Of course that can be an overt act if the misrepresentation is carried on on that date. Yes, Your Honor, but the way it's alleged in the complaint is that there was this concealment that when the call is made and even before, he's charged these additional premiums every year for 10 years and the call is made and there's a question about the validity of the premium increases. That is really closer to the type of situation where you have a, quote-unquote, concealment of a conspiracy after the conspiracy has been accomplished. And that is not a last overt act that tolls the statute under the Grunewald case and the other cases that we cite in the papers. You're merely saying we have to kind of cover it up. Was that a factual determination by the court or a conclusion of law that's reviewed in no vote? The court really didn't go into any kind of factual detail about that. Determination of when the last overt act occurred. Is that a factual determination or a legal conclusion? What is it supposed to be or what was it in this case? What is it? That determination is either a factual determination or a legal conclusion under the law. Which is it? Well, the courts have determined that, can determine that as a matter of law as they did in, you know, Black because they affirmed the sustaining of a demur that there was insufficient allegations. I mean, in that kind of a situation. But what did the district court do in this case? It made a finding of fact of when the last overt act occurred. I respectfully disagree, Your Honor. I don't believe the court was trying to do any fact finding. It was just stating based on the face of the complaint whether or not there potentially could be a claim there that would be sustained for conspiracy. Based on recent case law and even the Ritchie case cited by the court supports our position. There was a reasonable basis. You have an 11-year gap between the meeting with the plaintiff and the agent and the filing of the complaint. So it's your argument that the court did not make a finding of when the last overt act occurred? Not a finding of fact, Your Honor. An observation. An observation. An observation that based on the assertion that there was a call, that an inference could be drawn. It wasn't a factual finding because it isn't even alleged as such in the complaint that the call in 2004 was the last overt act in furtherance of a conspiracy. Is the word conspiracy anywhere in the complaint? It is. It does appear in the complaint. But there are no facts specifically identifying when the conspiracy started, what was done in furtherance of it, and when the last overt act was. Was anything identified as an overt act in the complaint? No, Your Honor. There's no separate cause of action for conspiracy or words to the effect which state what the overt acts were. Is your argument we had an objectively reasonable basis, even though it might turn out we were wrong, when everything falls out and you take a look at all this conspiracy stuff, we had an objectively reasonable basis based on the complaint we were looking at for removal. Is that your argument? Absolutely, Your Honor, because when you've got that 11-year gap, it's under the case law, it's the plaintiff's burden to allege facts showing why it is that the statute would be told. And that was the plaintiff's opportunity to say, hey, there was this conspiracy. It was ongoing. The last overt act was then and there and the other. But that isn't how the complaint was framed. There was a removal based on the 11-year disparity between the acts and the filing. What happened back in state court? In state court, there was a demur that was filed by Mega and the demur was sustained and the court recognized, and it's cited in the record, that the demur was well taken. That demur. That leave to amend. Leave to amend. Leave to amend was granted. What happened ultimately after that? Ultimately, the case was dismissed based on terminating sanctions for the plaintiff's failure to cooperate in discovery. But the court recognized that the demur based on the statute of limitations was well taken. On the face of what the superior court looked at, it was well taken. Correct. Exactly. There you're talking about on the first amended complaint. That was on the first amended complaint. Was it the same complaint that was before the federal court? There was no material difference with respect to this issue, Your Honor. And under that circumstance, ultimately there were other amendments to the complaint. But the conspiracy claims were never really asserted as such. It was really an inference that was drawn by Judge Cooper that that one allegation of the phone call could have been interpreted as a last overt act and thereby survived. If that kind of. Make sure I understand what you told me. Certainly. You told us a few minutes ago the case is now dead in the state court system. That's correct. It's on appeal. It was terminated. Correct. By Judge Fahy terminated it? Yes. Judge Fahy has dismissed the case. On what ground? It was a terminating sanction for failure, among other things, to have a Mr. Gardner, the plaintiff, appear at his deposition and then violating orders that he appear for his deposition. The other point I wanted to make in that regard is the recent case of the Supreme Court relied upon by Judge Cooper, Martin v. Franklin, recognizes that the purpose of these attorney fee awards is to deter improper removals that are solely for the purpose of causing delay or cost to the other side. But by the same token, the court also recognizes that if a party is expected to have an improper removal, an airtight case, an airtight defense, and that's the basis for the removal, if that's the standard, then that also would be improper because the courts should not deter proper removal. It's unusual for a court to do this. It's not that it's done every day. It's very unusual. I think the way I'd conclude it, Your Honors, is that reasonable minds may disagree as to whether or not Megha's case was airtight on the statute of limitations defense. But I don't think it has to be airtight. And whether it was or not airtight, that shouldn't be the standard. And we believe respectfully that Judge Cooper read too much into the complaint that really wasn't evident to a reasonable party looking to remove and looking at a complaint with those dramatic circumstances of the statute. Well, she made the point that conspiracy is not really a cause of action in and of itself. She was looking at the complaint with an eye toward whether or not there were sufficient allegations of fact to infer that a conspiracy existed. Correct. That's right. But the inference went well beyond that, not only that the conspiracy existed, but that without even being denominated as such, this 2004 unsolicited phone call was the last overt act of the defendants, which in and of itself I think is at least debatable. All right. You have exceeded your time. We'll give you a minute for rebuttal. Thanks again. I hear from you happily. Good morning, Your Honors. Doug Mastroianni for the appellee, Charles H. Gardner. Let me start off, if I may, just correcting a couple of misstatements that opposing counsel made. The first misstatement is the following remand, the superior court did not make any finding whatsoever that the statute of limitations argument was well founded. You can look at the request to take judicial notice, which is found with the court. He made that statement. No, he did not, Your Honor. Respectfully, he did not make that statement. There is a transcript of a hearing that occurred when the demurs were supposed to be argued. The demurs were, in fact, I appeared at that hearing and I told the court that we were filing an amended complaint, and it didn't make any sense to argue the demurs whatsoever. If you look at the minute order in the transcript, there is a statement that the demurs seemed well taken, but the district court didn't say what particular aspect of the demurs. There were a plethora of arguments made in the demurs' motions to strike. In the district court, you will not find the phrase statute of limitations either in that transcript or in the minute order. That is the first misstatement that I wanted to correct. The second misstatement I wanted to correct is about Judge Cooper's order. Judge Cooper does not find that the last override act was a phone call that was made in October 2004. What Judge Cooper found specifically in the order is that the last override act was the collection of the premiums. That was what the fraud was all about. It wasn't about phone calls that were made between the insured and the insurance broker. It was about the collection of premiums. What page is that on where she makes the finding that the last override act was the collection of the premiums? I can find it right here in one moment. Excuse the delay. She specifically addresses this argument that the last override act must have been the phone call. Right. That's on page 7. And I wanted to see where you thought she found specifically that the last override act was the payment of the premium. You found that on page 7, Your Honor? No. Where is it? I'm asking you. I said the discussion regarding the phone call is on page 7. But the payment of the premium, I don't see. If you look on page 8, there is a footnote in which Judge Cooper writes that a defendant's attempt to characterize the alleged conspiracy is when limited to fraudulent inducements by the policy is unconvincing. That doesn't say anything about a finding that the last override act was the continuation of a collection of premiums. You've got 30 seconds to find this. You know, you tell us that the other side made a mistake and you're going to correct the record. Where is it? Your Honor, I'm searching for it now. Okay. You can continue with your argument. We'll assume that you weren't able to find it. Your Honor, there was a lot of discussion in the briefing and also the argument about this idea of the conspiracy. But the claims were well pled against the non-diverse defendant, regardless of whether or not there's any tolling issues or conspiracy involved. Because what we've alleged in the complaint is that this was the plaintiff's insurance broker who continuously advised him about insurance needs all the way through this period of time that he was insured. Also in October 2004, 11 months before the complaint was filed. And it was based on these misrepresentations that the plaintiff continued to pay premiums. What's the status of the state court proceeding? Two things happened in the state court. Well, a number of things happened. But all of the orders and judgments entered by the trial court are up on appeal. I don't think that that's a relevant consideration. The question you were asked is what happened. The case was initially dismissed. Demers was sustained without leave. Following those orders, the court issued terminating sanctions after the case was dismissed. Both of those orders and judgments are up on appeal. Dismissed on what basis? Well, the court sustained Demers without leave. And then following those orders, entered orders granting motions for terminating sanctions. So it first sustained Demers without leave until then? Yes. Why? On what basis? On the basis, the court eventually found that the claims are not well pled, but there was no minute or that stated any specific basis for the rulings. So opposing counsel had made a representation that they were terminated for failure to cooperate with discovery. Is that true? That happened following the dismissal of the claims after the Demers and motions of strike were heard. That is accurate. What explains that? What explains what, Your Honor? Your refusal to produce your client for a deposition. Your Honor, I can go through the discovery proceedings and the underlying action. What happened was we received an order to appear for a deposition, served on us at 530 in the afternoon, the day before the deposition was supposed to occur, and my client was in Chicago. We had less than 12 hours to appear for a deposition, which my client was out of state. But what is relevant is what was in the pleading at the time of the removal of the case. And there were well-pled claims against the plaintiff. None of them were barred by the statute of limitations. I'll tell you what worries me as I read the analysis. And it says, well, a California court could have, could hold that overt act was committed, could hold that this happened, could hold. That suggests to me that it also could hold to the contrary. And if it could hold to the contrary, I don't see how you could say they didn't have an objectively reasonable basis to battle it out. Because the standard on removal is whether or not there's a non-fanciful claim. But she didn't say would hold. She said could hold. It's up in the air. It's a jump ball. Your Honor, in our view, it is not a jump ball. And I think it would be incorrect for this panel to find that the district court abused its discretion in awarding fees in this case. Abuse of discretion includes an error of law. So why wouldn't that be an error of law to say that it wasn't objectively reasonable when it could go either way according to the district court's own conclusions? Your Honor, I don't agree that it could have gone either way. But that's what she said. She said could hold. That doesn't mean would hold or necessarily would be constrained to hold. It could hold. Well, it could hold this. The district court was focused, for reasons that aren't exactly clear to me, because we had a number of arguments in the motion to remand on the civil conspiracy theory tolling the statute of limitations. But that was completely Well, I frankly think part of the problem was there was no hearing. So the parties didn't get a chance to argue it, right? This was all, you know, sort of thought up by the district court in a vacuum in the papers. I think that's true. And I don't think anybody even argued about, you know, whether attorneys' fees should be assessed or not, right? Well, we made a specific motion for fees, and there was an opposition to that motion filed, and we filed a reply in which we argued that fees were appropriate. And that was all done before the Supreme Court case was decided, right? I think she issued her order the day after Martin came down, which is why this may be one of the first cases to reach the circuit on the issue of the appropriateness of a fee award. But the civil conspiracy theory was unnecessary for the court to base her decision on because we have allegations of fraud in the collection of premiums that occurred only 11 months before the complaint was filed. So even if you completely ignore the civil conspiracy and you ignore the tolling issue, we still have claims in this complaint that are properly alleged that occurred within a year of the filing of the complaint. So the statute of limitations issue is completely irrelevant. If there's one single fact that I find interesting that the court, that the appeal could turn on is after the case was removed and we filed a remand motion, the purportedly sham defendant, the non-diverse insurance broker, filed an opposition to the remand motion in which he wrote, to the extent the October 2004 statements are actionable, they constitute a separate court. So what's remarkable is this court would have to find that Judge Cooper abused her discretion in finding that there were no claims pled against the non-diverse defendant, while the non-diverse defendant is filing documents in Judge Cooper's court, finding that a reasonable reading of the complaint says that there is actionable statements based on conduct that I did 11 months before the complaint was filed. No further questions, I presume? It appears not. Thank you, counsel. Thank you. We'll give you one minute for rebuttal, counsel. Yes, I'll probably agree with that. I wanted to just point out in response to Your Honor's questions that the comment concerning the last overt act in the order appears on the bottom of page 7, as the court mentioned. No, but we were talking about the representation that was made regarding the phone call being the last overt act. Correct, and that's on the bottom of page 7 of the order, the last paragraph of page 7. It says here, quote, from the court's order, because plaintiff has alleged that defendant's engaged in a conspiracy, the court must determine whether a California court could hold that an overt act of the conspiracy was committed within the limitations of the conspiracy. Yes, but that's not a finding by the court that the overt act was the last, that that was the last overt act. It just talks about the California court may find that. But then the court says the party's focus on the October 2004 phone call to Hayman, that phone call was made within one year of the filing of the present action, and if the call or any action taken thereafter is found to be an overt act, in furtherance, then a California court could hold that the action was not an overt act. Right, but the point is the court never, I was looking for where the court actually found that to be an overt act. And in that language, she said, if it's found to be an overt act. So that's why I asked the question, where did the court make the finding? The one other quick point is the reference in the record of the demur, where Judge Fahey said that the demur was well taken, is in the request for judicial notice exhibit D at page 65, lines 26 through 28. Substantively, I'm inclined to grant the demur and give you leave to amend. I think the arguments of the moving papers are well taken. Those moving papers. But his point was that the judge did not articulate whether it was a statute of limitations issue, which issue specifically. That's the point I'm getting to, Your Honor. The judicial notice excerpts from the record also show that the demur and the reply brief focused almost 90% on the statute of limitations issue. I understand, Your Honor. All right, thank you. Thank you to both counsel. The case as argued is submitted for decision by the court. That concludes our calendar for today. We are recessed. Thank you, Your Honor.
judges: Trott, Tashima, Rawlinson